It is said in Powell on Powers, page 8: "That powers simply collateral are when a person is invested with a capacity of disposing of interest in or of destroying an interest in uses and trusts in which he hath not, nor ever had, any estate, first of creating such estate, as where cestui que use devised that his feoffees should sell his lands, and died. Here the power to sell was merely collateral to the right of the land, for the feoffees take thereby no interest in the land, but (719) are barely empowered to sell.
"Secondly, of destroying such estates, as if there be a feoffment in fee by A., to divers uses, with power that if B. shall revoke them, the uses shall cease, for B. has no interest in the estate subjected to his power, nor can gain any by revoking or not revoking." For this he citesAlbany's case, 1 Co., 3, and Digges' case, 1 Co., 174.
The same doctrine is recognized in other books, and the same authorities relied upon, and it is said that a bare fine, feoffment, or common recovery will not destroy or extinguish them; but that powers appendant, or powers in gross, may be destroyed in either of those ways.
The argument of the plaintiff's counsel has thrown Haslen's power of appointment in the first class of powers, and takes it for granted that he has not exercised it by his deed to Kean, and that consequently that deed cannot be considered as a release of it, or as affecting it in any respect whatever. The correctness of the principle laid down by Mr. Powell may be admitted, but it cannot be admitted that Haslen's power of appointment resembles either of the instances of collateral naked powers by him set forth in the passage above recited. Hargrave in his notes on Co. Lit., 271, B, note 231, says that by a general power of appointment is understood that kind of power which enables the party to appoint the estate to any person he thinks proper, and in this sense it is opposed to a particular or qualified power, which enables the party to appoint to, or among, particular objects only. A general power enables the party to vest the whole fee in himself or any other person; in fact, therefore, giving the person such a power is nearly the same as giving the absolute *Page 505 
fee. The only difference is that it enables him to do through the medium of a seisin previously created that which if the fee had been actually limited to him he might do by a conveyance of the land itself. So that in both cases his power of alienation is of the same extent.
Again, where there is a general power given to a person for such uses as he shall appoint, this gives him such a dominion over it as will subject it to his debts. 3 Atk., 656; 1 Atk., 465; 2 Atk., 172; 2 Ves., 10. In this case, could not the creditors of Haslen, if he had any, (720) have subjected these lands to their debts?
It is stated in Co. Lit., 237, A: "That if he that hath the power of revocation hath no present interest in the land, nor by the ceasor of the estate shall have nothing, then his feoffment or fine, etc., of the land is no extinguishment of his power, because it is merely collateral to the land."
Can it be said that upon the ceasor of the estate in Kean, Haslen may not have an interest, in whom there is a general power to direct its course, either to himself or any other person he may think proper? As to powers merely collateral, there is a very good reason given why they should not be destroyed or extinguished, etc., because, says Hargrave, Co. Lit., 342, Note 298, referring to Co. Lit., 265: "Collateral powers are not in the nature of rights or titles, and cannot from their nature be released. But that when powers are given or reserved to any person, having any estate or interest either present or future in the land, the exercise of these powers is considered as advantageous to him, and there is no reason why he should not be allowed to depart with or exclude himself from the benefit of them. But when they are given to strangers, they are intended for the benefit of some third person, and therefore the extinction of them is supposed to be injurious to some person intended to be benefited by them." In this case who can be injured by Haslen's transferring his interest in either of the ways before specified? There are no third persons, as in the case of particular or qualified powers, that can sustain any injury — as, for instance, where the power of appointment is directed to be exercised in favor of the children of a particular marriage, or particular specified friends of the person creating the power. It would, therefore, seem that Haslen might transfer his interest under the power vested in him; for an interest he certainly had — and the deed from him to Kean, if it was not a strictly regular exercise of the power vested in him, ought to be considered as valid and operating in some other way.
But it is said that the deed to Kean operated as a delegation (721) of power, and that it is a maxim that "Delegatus non potestdelegare." For this is cited 2 Atk., 88. It will be seen that that was *Page 506 
the case of a particular qualified power, to be exercised in favor of particular persons, to wit, children of a particular marriage, where there was a personal confidence and trust reposed. But it can have no analogy to the exercise of a general power, where there is neither confidence nor trust in favor of third persons. But laying these considerations aside, I am of opinion that if there has not been a technical and formal exercise of the power of appointment by the deed from Haslen to Kean, by Haslen, there has been at least a substantial one. He states in that deed that he is acting in conformity to the power of appointment vested in him by the deed from Blount to Kean, and then directs, limits, and appoints that the lands shall be conveyed, etc., by the said Kean, at his discretion, to any person qualified to hold, acquire, and transfer lands. If, then, he had power to convey at pleasure to any person he chose, could he not elect to hold the lands himself? Suppose he had conveyed to some third person, could Haslen, in the face of his own deed, compel the purchaser to give up the lands? The effect of the deed to Kean from Haslen will not depend upon the after conduct of Kean, whether he conveyed or not. If lands are devised to one "to give or to sell," these latter words show the devisor's intention that a fee shall pass; had they not been added, only a life estate would have vested in the devisee. Co. Lit., 9; B. Was. Rep., 266; 1 Wythe's Rep., 6, 88. In this case the legal estate was in Kean, and being there, and he being authorized by Haslen to sell to whom he pleased, I think completed his estate. But it is said that if Haslen's deed to Kean had any effect, it could only be during the life of Haslen; that after his death, the power of appointment survived to Mrs. Haslen. I think that that power was only intended to vest in her in case her husband did not exercise it at all; but, if he has properly exercised the power of appointment, he has done itin toto.
NOTE. — See S. c., but not so fully reported, in 6 N.C. 309.
Cited: Tillett v. Nixon, 180 N.C. 203.
(722)